## Case No. 7,148.

### JACKSON v. SPRAGUE.

[1 Paine. 494.] [1]

Circuit Court, N. D. New York. Sept. Term, 1825.

---

[1] [Reported by Elijah Paine, Jr., Esq.]

T. A. Emmet, for plaintiff.
S. Jones, for defendant.

THOMPSON, Circuit Justice. This case comes up on a writ of error to the district court for the Northern district of this state. And the question presented for consideration arises out of a special verdict, upon which judgment has been given for the defendant. The result depends entirely upon the construction and location of the deed from Robert Morris to Andrew Craigie, of the 6th of April, 1797, under which [Havens], the lessor of the plaintiff, claims. The description of the land conveyed by this deed is as follows: "Beginning at the southwest corner of a certain tract of land of one hundred thousand acres granted to Craigie, Watson, and Greenleaf, on the 18th of February, 1792, thence extending east along the southern boundary of said tract six miles, thence southerly so far, as by lines to be drawn from those two points, parallel to the eastern and western boundaries of the said one hundred thousand acre tract, will include therein the quantity of thirty-three thousand seven hundred and fifty acres of land." This deed recites an agreement made on the 5th of August, 1795, between the parties, by which Morris covenanted to convey a tract of land corresponding in description with that contained in the deed. Morris, by a deed bearing date the 27th of February, 1793, had conveyed to Leroy, Sincklair, and Boon, a certain tract of land, which cut off two miles in width along the western side of the tract conveyed to Craigie, comprising eleven thousand six hundred and ninety-four acres. And the real question in the case is, whether the location of Craigie's deed can be extended south so as to make up this deficiency. When the agreement of the 5th of August, 1795, was entered into with Craigie, Morris owned the land south of the tract covenanted to be conveyed; but on the 1st of May, 1796, before the deed was given, he conveyed that land to Samuel Ogden, under whom the defendant claims, and proved title to the premises in question, as found by the special verdict.

Whatever claim the lessor of the plaintiff may have upon the covenants in the deed to Craigie, for an indemnity for this deficiency, there is no principle of law that will uphold a construction of the deed extending it so far south as to make up the deficiency, so as to entitle the plaintiff to recover in this case.

There is no uncertainty in the description, nor any part of it, which can be rejected, so as to favour the plaintiff's construction, even if Morris now owned the land on the southern bounds of the Craigie tract. A court of law has no authority by way of compensation to substitute one tract of land for another. But the legal title of Ogden, under whom the defendant claims, is older than that of Craigie. What a court of equity would do as between Craigie and Ogden, if the latter had notice of the articles of agreement of the 5th of August, 1795, cannot now be taken into consideration. But if no impediments, growing out of the rights of third persons, were presented against the plaintiff's claim, there is no principle of law upon which it could be sanctioned. The place of beginning in the description of the land, appears from the deed and the finding of the jury, with so much certainty and precision, that it cannot be rejected. And when this is once fixed, the residue of the location is plain and simple, admitting of no doubt. It begins .at the southwest corner of the one hundred thousand acre tract, granted to Watson, Craigie, and Greenleaf; and the jury have located this tract, as laid down on the diagram set out in the special verdict, and about the correctness of which there does not appear to have been any question. All the deeds and conveyances set out in the special verdict were given without any actual survey. But in one of them reference is had to a certain Indian deed, and an Indian village, which must have been a place of public notoriety; and which afforded a point from which the location of the one hundred thousand acre tract could be ascertained. Assuming then, as I think I am warranted in doing, that this tract is correctly laid down on the diagram, the grant to Craigie must be located in reference to that. It is to extend along the southern boundary of that tract six miles so as to make the same width; and then from the extremities of this six miles line as a base, lines are to be extended so far south as to include the thirty-three thousand seven hundred and fifty acres.

In this description there is no ambiguity nor uncertainty. It was said, however, that the description requires these extended lines .to be parallel with the east and west bounds of the one hundred thousand acre tract, and which could not be the case if it was a mere extension of those lines. This is undoubtedly mathematically true. But this part of the description may be rejected as repugnant to other parts, consistently with the soundest rules of interpretation. Whatever is repugnant and contradictory may be rejected, if enough is left plainly and clearly to designate the land intended to be conveyed. To retain this and reject the other parts that are repugnant to it, the description would be left imperfect and unintelligible.

It is worthy of remark that Craigie is one of the grantees in the one hundred thousand acre tract; and if the location of that, as laid down on the diagram, has been with his assent, it goes very far to conclude him, as to the location of the grant to himself alone. It has been urged, that as there was no actual survey, the quantity of land was the material part of the description, and that such location ought to be made as to embrace this quantity. The mere fact of no survey having been made, cannot change the settled rules of interpretation. Where metes and bounds are given, which can be satisfactorily ascertained, they will control the effect and operation of a deed, without regard to quantity. It was no doubt the understanding and expectation of the parties, that thirty-three thousand seven hundred and fifty acres of land were conveyed by the deed. And in all cases where quantity is mentioned, there is the like understanding; but this cannot control the construction. The intention is to be collected from the deed, and the language of the parties must be understood according to the settled rules of interpretation. But if we were to travel out of the deed to ascertain the intention of the parties, as to the location, it is very evident it would not support the plaintiff's construction; for it was clearly understood that the Craigie tract was to be located directly south of the one hundred thousand acre tract, and to be of the same width. The diagram contained in the margin of the deed to Cottinger as set out in the special verdict, is a strong confirmation of this, showing the relative situation of these several tracts. The remedy in this, as in all other cases where there is a breach of the covenants in a deed, must be for compensation in damages, especially if recourse is had to a court of law.

This case is not to be distinguished from that of Jackson ex dem. Craigie v. Wilkinson [17 Johns. 146], decided in the supreme court of this state, in which a construction and location is given to the grant now in question. This being the direct and only point before that court, the decision would be entitled to great weight, if not of controlling influence, even if the point admitted of doubt, in order to preserve harmony of construction in relation to the same title. But it is not a question upon which I entertain the least doubt or hesitation. The judgment of the district court is accordingly affirmed.